[Cite as *Schleich v. Penn Cent. Corp.*, 2024-Ohio-5005.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

THOMAS P. SCHLEICH,                    :

    Plaintiff-Appellant,           :          No. 113632

v.                                     :

PENN CENTRAL CORPORATION,              :
ET AL.,

                                       :

    Defendants-Appellees.          :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 17, 2024

---

Civil Appeal from the Cuyahoga County Common Pleas Court
Case No. CV-20-939184

---

### *Appearances:*

Eric H. Mann; Bern Cappelli LLC and Thomas J. Joyce, III, pro hac vice, *for appellant.*

Burns White LLC, Kevin C. Alexandersen, and Holly M. Olarczuk-Smith, *for appellees* Consolidated Rail Corporation and CSX Transportation, Inc.

Blank Rome LLP and Daniel L. Jones, Jr., *for appellee* American Premier Underwriters, Inc.

MICHELLE J. SHEEHAN, P.J.:

{¶ 1} Thomas Schleich appeals the trial court's grant of Consolidated Rail Corporation's, CSX Transportation, Inc.'s, and American Premier Underwriters, Inc.'s (hereinafter referred to as the "Appellees") motions to exclude the expert testimony of Dr. Mark Levin and motions for summary judgment. Because the trial court did not abuse its discretion in excluding Dr. Levin's testimony, it properly granted summary judgment to Appellees and we affirm the judgments appealed.

## PROCEDURAL HISTORY AND RELEVANT FACTS

{¶ 2} Schleich filed a toxic tort case under the Federal Employers' Liability Act, 45 U.S.C. 51, et seq. ("FELA") and the Locomotive Inspection Act, 49 U.S.C. 20701 against Appellees. Within the complaint, Schleich alleged that he worked for Appellees as a fireman, engineer, and road foreman and that during that time he was exposed to diesel exhaust. He alleged that exposure ultimately was a cause of him developing Acute Promyelocytic Leukemia ("APL"), a subtype of Acute Myeloid Leukemia ("AML").

{¶ 3} Appellees moved the trial court to exclude the testimony of Schleich's medical causation expert, Dr. Levin. They further moved for summary judgment arguing that because Dr. Levin's testimony regarding causation should be excluded, Schleich could not maintain his claims. Schleich concedes in this appeal that if Dr. Levin's testimony is excluded, summary judgment would be properly granted in favor of Appellees.

{¶ 4} Dr. Levin prepared an expert report in which he concluded "with a reasonable degree of medical certainty, that exposure to diesel exhaust containing benzene, by inhalation, was a cause or contributing factor in the development of Thomas Schleich's [APL]." Dr. Levin based his conclusion on a survey of scientific and medical literature through Google and PubMed. He cited the International Agency for Research on Cancer ("IARC") in forming his opinions as to the carcinogenicity of diesel exhaust and benzene in particular, noting that "IARC classifies diesel engine exhaust as 'carcinogenic to humans,' based on sufficient evidence that it is linked to an increased risk of lung cancer and that there is 'some evidence of a positive association' between diesel exhaust and bladder cancer." Dr. Levin also noted that "IARC concluded that benzene exposure has sufficient carcinogenic evidence in both human and animal studies in 1987." Dr. Levin opined that Schleich was exposed to diesel exhaust, that benzene has been found to be a cause of APL, and because diesel exhaust contains benzene, Schleich's exposure to diesel exhaust was a cause of Schleich's condition.

{¶ 5} The trial court issued a written opinion ("Tr. Ct. Op.") excluding Dr. Levin's testimony. Within the Tr. Ct. Op., the trial court found several reasons to exclude Dr. Levin's testimony. Of relevance to this appeal, the trial court found Dr. Levin's method for finding and analyzing the scientific literature to be unreliable under Ohio law. The trial court cited IARC Monographs that studied railroad workers and found "the existing scientific literature relating to railroad workers and

their exposures states that the evidence, as it relates to cancers such as leukemia, 'did not support an effect of exposure to diesel and/or gasoline engine exhausts.'" Tr. Ct. Op. at p. 8, citing IARC Monograph 105, p. 457. IARC Monograph 105, p. 149-173. The trial court also found that Dr. Levin did not explain how he reached his conclusion or how his conclusion was supported by the literature he relied upon in reaching his conclusion. Further, the trial court found that

> Dr. Levin's opinion that [Schleich's] exposure to Benzene, as a component of diesel exhaust, is insufficient to support an admissible general causation opinion. *See*, *Cook* v. *CSX Transp., Inc.,* Case No. 16-2017-CA-005874, \*2 n. 1 ("[A]n expert's reliance on literature regarding a component or constituent of an exposure or product where the exposure or product itself is not associated with the disease at issue is insufficient to support a general causation opinion under *Daubert* [*v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579 (1993)]"); *Burst* v. *Shell Oil Co.,* 2015 U.S. Dist. LEXIS 77751, \*22-23 (E.D. La. June 16, 2015).

{¶ 6} After making these findings, the trial court explained "Dr. Levin's failure to engage in a meaningful explanation as to how the studies relied upon support his opinions renders his opinions unreliable, and therefore, inadmissible." Tr. Ct. Op. at 10. It further explained that "Dr. Levin is not aware of any study that states that exposure to diesel exhaust can cause APL. There is simply too great of an analytic gap between the data and Dr. Levin's opinion." *Id.* at 11.

## LAW AND ARGUMENT

### Assigned Error and Relevant Law

{¶ 7} Schleich assigns as error that the trial court misapplied the law and therefore abused its discretion in excluding Dr. Levin's testimony and that, as such, it also erred in granting summary judgment. Appellees argue that the trial court properly exercised its discretion in excluding Dr. Levin's testimony and that, as such, properly granted summary judgment.

{¶ 8} Having brought a toxic tort case, Schleich was required to produce expert testimony on the issue of medical causation. *Alden v. Phifer Wire Prods.*, 2005-Ohio-3014, ¶ 19 (8th Dist.), citing *Valentine v. PPG Industries*, 2004-Ohio-4521, ¶ 17 (4th Dist.); *Shiver v. Georgia & Florida Railnet, Inc.*, 287 Ga.App. 828, 830-831 (Ga. Ct. App. 2007) (In FELA case, plaintiff must provide expert testimony to prove causation.). In bringing a case based on toxic exposure, a plaintiff's expert medical testimony must prove both general causation and specific causation. *Terry v. Caputo*, 2007-Ohio-5023, ¶ 15. General causation requires a showing that exposure to a toxin is capable of causing the disease contracted. *Id.* As such, if Dr. Levin's testimony on general causation is found to have been properly excluded, then summary judgment was properly granted in favor of Appellees.

{¶ 9} We review a trial court's decision to exclude evidence for an abuse of discretion. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). An abuse of discretion "'implies not merely error of judgment, but perversity of will, passion,

prejudice, partiality, or moral delinquency.'" *TWISM Ents., L.L.C. v. State Bd. of Registration for Professional Engineers & Surveyors*, 2022-Ohio-4677, ¶ 3, quoting *State ex rel. Commercial Lovelace Motor Freight, Inc. v. Lancaster*, 22 Ohio St.3d 191, 193 (1986). Further, an abuse of discretion also "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). However, trial "courts lack the discretion to make errors of law. . . ." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 39.

{¶ 10} Under Evid.R. 702(C), an expert's testimony must be based on "reliable scientific, technical, or other specialized information." When determining the admissibility of expert testimony, a trial court is tasked with examining whether the conclusion of the expert is based on scientifically valid principles and methods, not whether the conclusion is correct. *Miller v. Bike Ath. Co.*, 80 Ohio St.3d 607, (1998), paragraph one of the syllabus. The Ohio Supreme Court stated that "[b]ecause even a qualified expert is capable of rendering scientifically unreliable testimony, it is imperative for a trial court, as gatekeeper, to examine the principles and methodology that underlie an expert's opinion." *Valentine v. Conrad*, 2006-Ohio-3561, ¶ 17. When assessing the reliability of an expert's method or theory, the Ohio Supreme Court found that

> [t]he trial court should first assess whether the method or theory relied upon has been tested. Next, it should consider whether the theory has been the subject of peer review, and then whether the method has a known or potential error rate. Finally, *Daubert* instructs trial courts to look at whether the theory has gained general acceptance in the

scientific community. None of these factors, of course, is dispositive of the inquiry, and when gauging the reliability of a given expert's testimony, trial courts should focus "solely on principles and methodology, not on the conclusions" generated.

(Cleaned up.) *Terry* at ¶ 25, citing *Daubert*, 509 U.S. at 592-594.

## The trial court did not abuse its discretion by excluding Dr. Levin's testimony and properly granted summary judgment

{¶ 11} In this case, the trial court excluded Dr. Levin's testimony for several reasons, including a finding that Dr. Levin's opinion on general causation was unreliable. If we determine the trial court did not abuse its discretion in doing so on this issue, then we need not address the several other reasons the trial court excluded the testimony because Schleich would not be able to produce expert testimony on both general and specific causation. *Terry*, 2007-Ohio-5023, at ¶ 31 ("Without expert testimony to establish both general causation and specific causation, a claimant cannot establish a prima facie case of exposure to mold or other toxic substance.").

{¶ 12} As to the issue of general causation, the trial court examined Dr. Levin's expert report and deposition testimony and found that the basis of his methodology in searching the scientific literature was not reliable where Dr. Levin "did not track or otherwise maintain the list of the search terms he used or the results from his searches." Tr. Ct. Op. at 6, citing *Sherman v. BNSF Ry. Co.*, 2022 U.S. Dist.

LEXIS 7561, *9 (C.D. Ill. January 14, 2022).[1]  The trial court also found Dr. Levin's opinion on general causation to stand apart from the scientific literature. It specifically noted that the IARC studied whether diesel exhaust exposure may cause cancers, including leukemia, and Dr. Levin failed to address this literature in his deposition.  Tr. Ct. Op. at 9 - 10, citing IARC Monograph 105, p. 149-173.  Moreover, the trial court found that "[w]hen a scientist claims to rely on a method practiced by most scientists, yet presents conclusions that are shared by no other scientist, the district court should be wary that the method has not been faithfully applied." *Id.* at 10, citing *Cook*, 2023 Fla. Cir. LEXIS 5000, at *10, quoting *Lust by & Through Lust v. Merrell Dow Pharmaceuticals, Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

{¶ 13}  Expert medical testimony on causation is required in a toxic tort case, but that testimony must be reliable.  Dr. Levin did not explain or support his opinion with any scientific study finding that diesel exhaust was a cause of leukemia or Schleich's specific form of leukemia. In light of scientific literature that railroad workers' exposure to diesel engine exhaust as it relates to cancers such as leukemia was not supported, the trial court's determination that Dr. Levin's opinion was too "great an analytic leap" was not abuse of its discretion.  *See Arn*, 2024 Fla. Cir. LEXIS 880, *69 ("Plaintiff has presented no evidence reflecting any effort by Dr.

---

[1]  We note that two Florida state trial courts similarly found Dr. Levin's search methodology to be unreliable.  *Arn v. CSX Transp., Inc.*, 2024 Fla. Cir. LEXIS 880; *Cook*, 2023 Fla. Cir. LEXIS 5000.

Levin to weigh the evidence or explain how the substantial body of literature that is contrary and unsupportive of his opinions was outweighed by the studies he selected. These failures make Dr. Levin's causation testimony unreliable and inadmissible under *Daubert*."); *Sherman* at *9-11; *Cook*, 2023 Fla. Cir. LEXIS 5000, at *12-13.

{¶ 14} The trial court considered Dr. Levin's opinion on general causation and found the methods used by Dr. Levin in forming his opinion to be unreliable and that his conclusions were neither explained nor supported by the scientific community. Because the trial court engaged in a reasoned analysis of the expert testimony, we cannot say the trial court abused its discretion in exercising its role as gatekeeper and excluding Dr. Levin's testimony on the issue of general causation. As such, the trial court did not err in granting summary judgment to Appellees.

{¶ 15} Schleich's alleged error is overruled.

## CONCLUSION

{¶ 16} In bringing a toxic tort claim against Appellees, Schleich was required to produce expert medical testimony on the issue of general causation. The trial court considered the methods Schleich's expert used to arrive at his conclusion and the underlying reasons for the opinion. The trial court did not err in excluding the expert testimony where the methodology in reaching the expert opinion was found to be unreliable and where the opinion was not supported by any scientific literature

and the lack of support was not explained. Because the expert testimony was excluded, the trial court properly granted summary judgment to Appellees.

{¶ 17} Judgment affirmed.

It is ordered that appellees recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, PRESIDING JUDGE

LISA B. FORBES, J., CONCURS;
MARY J. BOYLE, J., CONCURS IN JUDGMENT ONLY