[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. P.J.F.*, Slip Opinion No. 2022-Ohio-4152.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-4152

THE STATE OF OHIO, APPELLEE, *v.* [P.J.F.], APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. P.J.F.*, Slip Opinion No. 2022-Ohio-4152.]**

*Criminal law—R.C. 2953.32—Sealing of records—When an offender's nonresidential community control is terminated, the conditions of nonresidential community control are terminated as well and the offender receives a final discharge from the community-control sanction—Court of appeals' judgment reversed and trial court's judgment ordering sealing of record of conviction reinstated.*

(No. 2020-0700—Submitted April 28, 2021—Decided November 23, 2022.)

APPEAL from the Court of Appeals for Franklin County,

No. 19AP-147, 2020-Ohio-1522.

_____

**DONNELLY, J.**

{¶ 1} In this discretionary appeal from a judgment of the Tenth District Court of Appeals, we are asked to determine the point at which a person convicted

of a felony attains a "final discharge" from a sentence of nonresidential community control for purposes of becoming eligible to have the felony conviction sealed. Specifically, we must determine whether the failure to have satisfied a condition of community control prevents a defendant from receiving a final discharge even after community control has been terminated. We hold that it does not. When a defendant's nonresidential community control is terminated, the defendant receives a final discharge from the community-control sanction. Accordingly, we reverse the judgment of the Tenth District holding otherwise, and we reinstate the trial court's judgment.

## BACKGROUND

{¶ 2} In 2003, the Domestic Relations and Juvenile Division of the Franklin County Court of Common Pleas ordered appellant, P.J.F., to pay $216.85 per month in child support for his daughter, D.F., who was born in 1998. P.J.F. failed to pay most of his child-support obligation from June 2008 to June 2010, and in 2012, he was convicted of one fifth-degree felony count of nonsupport of a dependent, in violation of R.C. 2919.21. The trial court imposed a five-year term of nonresidential community control with conditions such as a prohibition against being arrested for or convicted of any new offense, a requirement to comply with all child-support orders, and a requirement to pay child-support arrearages owed through February 29, 2012, which totaled $8,857.80. As for financial sanctions under R.C. 2929.18, the court waived fines and court costs after considering P.J.F.'s present and future ability to pay.

{¶ 3} In 2013, P.J.F.'s probation officer notified the court that P.J.F. had violated the conditions of his community control, primarily by failing to pay arrearages to the Franklin County Child Support Enforcement Agency and failing to make several monthly child-support payments since his conviction. Based on P.J.F.'s failure to comply with the conditions of his community control, the trial court ordered him to spend multiple three- or four-day periods in jail during 2013

2

and 2014 and otherwise continued his community control. On July 21, 2014, the trial court considered a request to terminate community control. The record does not indicate which party filed the request. The trial court granted the request and "discharged" P.J.F. from community control, though it noted that he had not complied with the terms of his community control.

{¶ 4} On December 17, 2018, P.J.F. filed an application to seal the record of his conviction. The state asserted that P.J.F. was ineligible to have his record sealed, arguing that he had not yet paid "restitution" and therefore had "not received a final discharge" from his 2012 sentence. Apart from the threshold eligibility issue, the state did not otherwise dispute that the record of P.J.F.'s conviction should be sealed.

{¶ 5} The trial court held that the obligation to pay $8,857.80 in arrearages pursuant to the domestic-court order included amounts outside the two-year time frame in P.J.F.'s indictment, and therefore necessarily constituted a condition of P.J.F.'s nonresidential community control rather than a restitution order.[1] The trial court further indicated that P.J.F. was eligible to have his conviction record sealed and that his interest in sealing the record outweighed the state's interest in keeping it open. The trial court granted P.J.F.'s application and ordered that his conviction record be sealed.

{¶ 6} The state appealed the trial court's decision to the Tenth District. The state acknowledged that it was incorrect when it argued to the trial court that P.J.F.'s failure to pay "restitution" prevented final discharge from his sentence. Instead, it argued that under *State v. Aguirre*, 144 Ohio St.3d 179, 2014-Ohio-4603, 41 N.E.3d

---

1. Because R.C. 2929.18(A)(1) limits restitution to the economic loss that resulted from "the offense" for which the defendant was indicted, a sentencing court cannot order the payment of child-support arrearages as restitution if the court includes amounts that accrued outside the dates of the nonsupport offense stated in the indictment, *see State v. Fuller*, 2015-Ohio-523, 27 N.E.3d 574, ¶ 13-14 (8th Dist.). Ohio courts have recognized that such an order is a condition of community control. *See id.* at ¶ 14-15 (collecting cases).

1178, P.J.F.'s failure to satisfy the arrearage-payment condition of his community control prevented his final discharge. Because P.J.F. had not satisfied that condition of his community control, the state claimed that he had not received a final discharge from his 2012 sentence and thus, he was ineligible to have the record of his conviction sealed. In response, P.J.F. argued that the state had forfeited its argument regarding the conditions of his nonresidential community control by failing to raise the argument below. He further argued that *Aguirre* addressed restitution only and does not apply to past conditions of community control.

{¶ 7} The Tenth District rejected P.J.F.'s forfeiture argument and addressed the merits of the state's argument under a de novo review.[2] 2020-Ohio-1522, ¶ 13. The appellate court agreed with the state's interpretation of *Aguirre* and held that the conditions of a defendant's nonresidential community-control sanction constitute sentencing requirements and that a defendant must satisfy all such sentencing requirements in order to receive a final discharge. *Id*. at ¶ 11-12. The court therefore reversed the judgment sealing P.J.F.'s nonsupport conviction.

{¶ 8} P.J.F. sought our discretionary review of the Tenth District's decision, and we accepted jurisdiction over the following proposition of law: "In a felony child support case, an applicant becomes eligible to have his record sealed when his child support payments are ordered as a condition of community control, his community control is terminated[,] and the statutory waiting period has elapsed." *See* 159 Ohio St.3d 1481, 2020-Ohio-4053, 150 N.E.3d 975.

**ANALYSIS**

{¶ 9} The question presented here centers on the meaning of the term "final discharge" as it is used in R.C. 2953.32. Accordingly, we are presented with a

_____

2. In rejecting P.J.F.'s forfeiture argument, the Tenth District implied that any error of law that a trial court commits regarding an applicant's eligibility under R.C. 2953.32 renders the judgment void and subject to a challenge by the state at any time. 2020-Ohio-1522 at ¶ 13. The parties do not currently dispute the trial court's jurisdiction or the standard of review employed by the Tenth District, and therefore our decision today does not reach those issues.

question of law, which we review de novo. *See Gabbard v. Madison Local School Dist. Bd. of Edn.*, 165 Ohio St.3d 390, 2021-Ohio-2067, 179 N.E.3d 1169, ¶ 6. "If the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary." *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.*, 74 Ohio St.3d 543, 545, 660 N.E.2d 463 (1996). The meaning of a statutory term must be understood in its context and "according to the rules of grammar and common usage." *Rhodes v. New Philadelphia*, 129 Ohio St.3d 304, 2011-Ohio-3279, 951 N.E.2d 782, ¶ 17, citing R.C. 1.42. If "a term is not defined in the statute, it should be accorded its plain and ordinary meaning." *Id.*

### "Final discharge" is the completion of a sanction

{¶ 10} The version of R.C. 2953.32 in effect at the time of P.J.F.'s application[3] to seal the record of his conviction provides that an offender is eligible to apply to seal the record of a conviction "[a]t the expiration of three years after the offender's final discharge if convicted of one felony." Former R.C. 2953.32(A)(1)(a), 2018 Am.Sub.S.B. No. 66. The relevant statutes do not define "final discharge." *See* R.C. 2953.31 (definitions relating to the sealing of records of convictions) and 2953.32.

{¶ 11} As a general legal concept, "discharge" is defined as "[a]ny method by which a legal duty is extinguished," such as "the payment of a debt or satisfaction of some other obligation." *Black's Law Dictionary* 581 (11th Ed.2019). We also commonly use "discharge" to indicate legal relief from an obligation despite the failure to satisfy that obligation. *See* 11 U.S.C. 727 (discharge of a debt in bankruptcy); R.C. 2949.09 (describing "discharge" as an alternative to payment of a fine).

---

3. The statute in effect at the time of the filing of an application to seal the record of a conviction is controlling. *State v. LaSalle*, 96 Ohio St.3d 178, 2002-Ohio-4009, 772 N.E.2d 1172, paragraph two of the syllabus.

**{¶ 12}** Our criminal statutes sometimes use "discharge" to connote a person's physical release from confinement. *See, e.g.*, R.C. 2930.16(C)(3) (regarding notice to victims of a juvenile offender's discharge from incarceration); R.C. 2937.12(B)(4) (allowing for the discharge of an accused from custody for lack of probable cause following a preliminary hearing). However, in the context of sealing criminal records, it is clear from the phrasing of R.C. 2953.32(A)(1)(a) that the "discharge" is from the applicant's felony conviction, which would include all attendant criminal sanctions. *See Aguirre*, 144 Ohio St.3d 179, 2014-Ohio-4603, 41 N.E.3d 1178, at ¶ 1-2 (holding that "final discharge" connotes a completion of "all sentencing requirements").

**{¶ 13}** In *Aguirre*, the defendant sought to have the record of her felony conviction for theft sealed despite not having paid more than $14,000 in restitution that was ordered as part of her sentence. *Id*. at ¶ 3, 21. This court explored the meaning of "final discharge" in the context of a restitution order, which is a financial community-control sanction that a sentencing court may impose under R.C. 2929.18. In that specific context, we held that "the final discharge required by R.C. 2953.32(A)(1) does not occur until an offender satisfies all sentencing requirements." *Id.* at ¶ 28. Because the defendant's sentence required payment of restitution, we held that the sentence would not be satisfied until restitution was fully paid. *Id.* at ¶ 29.

**{¶ 14}** Although the Tenth District drew parallels between P.J.F.'s obligation to pay child-support arrearages and the defendant's obligation to pay restitution in *Aguirre*, P.J.F.'s obligation was not a financial community-control sanction under R.C. 2929.18. Instead, P.J.F. received a nonresidential community-control sanction under R.C. 2929.17, and payment of his arrearages pursuant to a domestic-court order was a *condition* of that criminal sanction, rather than a sanction itself.

6

**Different sanctions are completed in different ways**

{¶ 15} There are important differences between the two types of sanctions in R.C. 2929.17 and 2929.18. For one, financial sanctions under R.C. 2929.18 may be imposed in addition to a prison term for an offense, whereas nonresidential community-control sanctions cannot be imposed simultaneously with a prison term. R.C. 2929.13(A). A sentencing court cannot impose a period of nonresidential community control that exceeds five years, R.C. 2929.15(A)(1), but a party who is owed money from a financial community-control sanction may obtain a civil judgment that can be enforced with no specific time limits, R.C. 2929.18(D)(1). And most importantly here, a financial sanction is imposed in the form of a dollar "amount" to be paid, R.C. 2929.18, whereas a nonresidential community-control sanction is imposed for a specific "period" of time, R.C. 2951.02(A), or "duration," R.C. 2929.15(A)(1).

{¶ 16} The provisions within R.C. 2929.18 detail the many different types of financial sanctions and the different amounts that a defendant might have to pay, but the defendant's obligation is all the same: pay what is due. During nonresidential community control, a defendant's obligation is to comply with a variety of conditions imposed by the trial court so that he or she may serve the duration of the sentence outside of confinement. *See* R.C. 2929.17(A) through (O); *see also* R.C. 2929.15(B)(1)(c) (allowing the sentencing court to impose a prison term for violations of community-control conditions).

{¶ 17} Had the defendant in *Aguirre* immediately paid full restitution, she would have achieved final discharge from her criminal sanction. *Aguirre*, 144 Ohio St.3d 179, 2014-Ohio-4603, 41 N.E.3d 1178, at ¶ 29. But even if P.J.F. had immediately paid the entirety of his child-support arrearage on the day that the trial court imposed his sentence, he would not have achieved final discharge. The conditions of nonresidential community control are not a checklist of obligations that, once met, result in the defendant's immediate discharge from the community-

control sanction. *See State v. Rue*, 164 Ohio St.3d 270, 2020-Ohio-6706, 172 N.E.3d 917, ¶ 37 (even exemplary compliance with conditions of community control does not automatically reduce the duration of the sanction). Conversely, a defendant's failure to fully comply with all conditions of nonresidential community control does not preclude the defendant from completing the period of community control. *See Rue* at ¶ 51-53 (a defendant's failure to make payments and failure to report to a probation officer do not allow a period of nonresidential community control to continue past the five-year maximum). Instead, the conditions imposed as part of a community control-sentence are simply special rules with which the defendant must comply during a specified period in order to avoid the imposition of harsher sanctions, including imprisonment. Once that period is over, both the threat of harsher sanctions and the special rules cease to apply.

{¶ 18} When considering the context of the different types of sanctions in R.C. 2929.17 and 2929.18, the meaning of "final discharge" or completion of a community-control sanction is clear. A defendant completes a financial community-control sanction by paying it, and a defendant completes a nonresidential community-control sanction at the end of its duration.

**Sanctions do not necessarily require satisfaction for completion**

{¶ 19} Our holding in *Aguirre* indicated that the only way the defendant could have received a final discharge from her financial community-control sanction under R.C. 2929.18 was by satisfaction of her payment obligation; but we must note that restitution is unique among financial community-control sanctions. Although a trial court has some power to modify the payment terms of a restitution order, *see* R.C. 2929.18(A)(1), an order of restitution is exempt from the general rule allowing a trial court the discretion to reduce the amount of a financial sanction or eliminate it entirely. *See, e.g.*, R.C. 2929.15(C) (reduction of financial sanction); R.C. 2929.18(G) (suspension of financial sanction); R.C. 2929.17(C) (order of community service in lieu of paying financial sanction). Thus, in contexts other

than a restitution order like the one involved in *Aguirre*, it is possible for a defendant to complete a financial community-control sanction by obtaining judicial relief from the payment obligation, rather than by satisfying the obligation.

{¶ 20} Similarly, a defendant does not always need to satisfy a full period of nonresidential community control in order to complete the sanction; a trial court may relieve a defendant of the obligation to serve the full period by ordering an early termination of the community control. R.C. 2929.15(B)(2)(b) and (C). That is what happened in this case. P.J.F. did not fully satisfy the original 2012 sentence of a five-year period of nonresidential community control, but he obtained judicial relief from that sentence when the trial court granted the motion to terminate P.J.F.'s community control early in its 2014 order.[4]

## CONCLUSION

{¶ 21} When P.J.F.'s term of nonresidential community control under R.C. 2929.17 was terminated on July 21, 2014, the condition of his community control that he pay child-support arrearages was terminated as well. P.J.F. has therefore achieved final discharge; he became eligible to have his record of conviction sealed as of July 21, 2017, pursuant to the applicable version of R.C. 2953.32, and the trial court properly considered the merits of his 2018 application to seal his record of conviction. We therefore reverse the judgment of the Tenth District Court of Appeals and reinstate the judgment of the Franklin County Court of Common Pleas.

Judgment reversed.

KENNEDY, DEWINE, STEWART, and BRUNNER, JJ., concur.

O'CONNOR, C.J., concurs in judgment only.

FISCHER, J., dissents.

---

4. The trial court's 2014 order does not explain the basis for early termination, and it is not clear from the record whether the order complied with R.C. 2929.15. However, the state did not appeal the 2014 order and does not currently dispute its propriety.

G. Gary Tyack, Franklin County Prosecuting Attorney, and Steven L. Taylor and Michael P. Walton, Assistant Prosecuting Attorneys, for appellee.

Law Offices of Mark J. Miller, L.L.C., and Mark J. Miller, for appellant.

_____